THE TAMPICO.

(District Court, N. D. California. February 16, 1907.)

No. 13,560.

1. SHIPPING—CONTRACT LIMITING LIABILITY—HARTER ACT.

Section 1 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), which provides that any clause of a bill of lading or shipping receipt for the transportation of merchandise or property from or between ports of the United States and foreign ports, whereby the vessel owner, master, or agent shall be relieved from liability for loss or damage arising from negligence, etc., "shall be null and void and of no effect," applies to any shipment "from ports of the United States,"

151 F.—44

whether to a foreign or domestic port, and is broad enough to render void a clause of a bill of lading by which the shipper waives any lien upon the vessel for any breach thereof, where it is attempted to set up such clause as a defense to a libel in rem to recover for loss or damage to cargo arising from negligence of the carrier.

[Ed. Note.—Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

**2. SAME—WAIVER OF LIEN FOR DAMAGE TO CARGO—VALIDITY.**

Such a provision of a bill of lading is void, independently of statute, as against public policy, in that it would deprive the shipper in advance of one of the remedies given him by the law for a breach of the contract.

**3. SAME—SUIT TO RECOVER FOR DAMAGE TO CARGO—NOTICE OF CLAIM.**

Where a bill of lading provides that notice of any claim for loss or damage to the property must be given to the carrier within a stated time after delivery, the failure to give such notice is a matter of defense in a suit to recover for such loss or damage, and performance of the requirement need not be alleged in the libel.

In Admiralty.   On exceptions to libel.

Bigelow & Cashman and Andros & Hengstler, for libelant.

Smith & Pringle, for claimant.

DE HAVEN, District Judge.   This is an action in rem against the steamship Tampico to recover $2,600 as damages for the loss of 400 packages of powder, shipped by libelants on that steamer at Seattle in the state of Washington, for carriage to Solomon, Alaska.   The libel alleges that, owing to the negligence and default of the master, owners, servants, and agents of the steamer "in the stowage, custody, and care of said merchandise, the said merchandise was totally lost on the said voyage."   The bill of lading under which the shipment was made, as shown by the libel, contains the following clauses:

"It is agreed that no lien shall attach to any of the vessels employed in the performance of this contract for any breach thereof, but such lien is hereby expressly waived."

"And it is expressly stipulated and agreed that in case any claim shall arise against the carrier from any loss or damage, such claim shall be preferred in writing to the agent of the carrier at the port of destination within ten days after the landing or delivery thereof. And in case such claim, whatever it may be, shall not be preferred within the time and at the place hereinbefore designated, such loss or damage shall be deemed to be waived, and the carrier shall be discharged therefrom."

The claimant has filed exceptions to the libel, the first of which is to the effect that it does not state a cause of action against the Tampico, because it appears therefrom that by the terms of the bill of lading, it was agreed between the libelants and claimant "that no lien shall attach to any of the vessels employed in the performance of this contract for any breach thereof, but such lien is hereby expressly waived."

1. In reply to this exception, the libelants insist that the stipulation referred to cannot be enforced, first, because it is forbidden by section 1 of the act of Congress, commonly known as the "Harter Act" (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]); and, secondly, because independently of that statute, it is contrary to public policy, and therefore void.   In my opinion the libelants are right in both of these contentions.   Section 1 of the act of Congress, above referred to as the "Harter Act," is as follows:

"It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect."

It has been said this section is only applicable to vessels engaged in foreign commerce (The E. A. Shores [D. C.] 73 Fed. 344), and, if so, it would not affect the particular agreement now under consideration, as the goods of libelant were to be carried by the Tampico from one domestic port to another; but, as construed by the Supreme Court in Knott v. Botany Mills, 179 U. S. 69, 21 Sup. Ct. 30, 45 L. Ed. 90, the section applies to "any vessel transporting merchandise or property from ports of the United States, or between ports of the United States and foreign ports," and it was further said in that case:

"The words, 'from ports of the United States,' would by themselves be sufficient to cover all voyages which began here whether they end in a domestic or in a foreign port."

It is, however, further argued upon the part of the claimant that the section only applies to agreements whereby the owner or master of a vessel stipulates for a release of personal liability for negligence in the stowage, care, or proper delivery of cargo, and does not forbid a contract such as this, where the parties simply agree that the shipper's lien upon the vessel for breach of the contract of carriage is waived; but it seems very clear to me that the section is broad enough, and was intended, to declare that any agreement that the vessel shall be relieved from liability for damages arising from negligence in the proper custody and care of all lawful merchandise or property delivered to it for carriage shall be null and void. The libel alleges that the damages claimed arose from negligence in the proper custody and care of the merchandise shipped by libelants, and as, by the terms of the statute referred to, the agreement by which the owners of the vessel undertook to relieve the vessel from liability for such damages is "null and void and of no effect," it follows that such agreement does not constitute a defense to this action.

2. If, however, it should be conceded that the stipulation is not forbidden by the statute referred to, the concession would not help the claimant; for, independently of any positive law forbidding it, such an agreement is void, because opposed to public policy. It undertook in express terms to waive the maritime lien which attaches to a vessel for the satisfaction of damages which the shipper may sustain in the event of a breach of the contract of carriage; and there can be no doubt that, if valid, it was a waiver upon the part of the libelants of the right to proceed in rem against the vessel for the recovery of the damages claimed by them in this action, because, unless there is a lien or charge against the vessel for such damages, the action in rem will not lie. Willard v. Dorr, 3 Mason, 91, Fed. Cas. No. 17,679; Boone v. The Hornet, Crabbe, 426, Fed. Cas. No. 1,640; The Mayurka,.

2 Curt. 72, Fed. Cas. No. 1,175. In the case of The Mayurka, just cited, Mr Justice Curtis said:

"I consider a proceeding in rem in the admiralty to be a proceeding to give effect to a maritime lien arising ex contractu, or quasi ex contractu, or ex delicto, or quasi ex delicto, and that such a lien must always exist to form the base of such proceeding. This is very clearly, and, I think, accurately, stated by Lord Chief Justice Jarvis, in the case of Marmer v. Bell, 22 Eng. Law & Eq. 72, decided by the Privy Council in 1852: 'A maritime lien is the foundation of all proceedings in rem, a process to make perfect a right inchoate, from the moment the lien attaches; and, whilst it must be admitted that where such a lien exists a proceeding in rem may be had, it will be found to be equally true that in all cases where a proceeding in rem is the proper course there a maritime lien exists, to be carried into effect by legal process.'"

It is urged by claimants that it was competent for libelants to thus waive their right to proceed in rem against the vessel by waiving the maritime lien, that the personal liability of the owner remains, and that the stipulation is one which concerns only the contracting parties, and is the same in principle as contracts releasing the carrier from his common-law liability as an insurer of goods intrusted to him, and exempting him from all losses not occasioned by the negligence of himself or his servants, or those prescribing the time within which notice of the claim for damage shall be given in order to fix his liability, etc., which have been sustained by the courts as not against public policy. But there is a great difference between such agreements and the one under consideration here. This does not prescribe the extent of the obligation assumed by the carrier in respect to the goods received for transportation, or fix a time within which notice of loss or damage shall be given, but is in effect a waiver in advance of one of the remedies which the law gives for a breach of the carrier's obligation, and it is this feature which is contrary to public policy. It is true that a court should not, except in a clear case, declare a contract to be void as against public policy, when such contract is not against good morals nor forbidden by statute. Estate of Garcelon, 104 Cal. 570, 38 Pac. 414, 32 L. R. A. 595, 43 Am. St. Rep. 134. But the present is not one in which the invalidity of the contract on that ground is at all doubtful. The law gives two remedies in a court of admiralty for the breach of a contract for the carriage of goods by sea—the action in rem against the vessel and an action in personam against the carrier—either one or both of which the shipper has the right to pursue until he has obtained full satisfaction. The Zenobia, Abb. Adm. 48, Fed. Cas. No. 18,208; The J. F. Warner (D. C.) 22 Fed. 342; The Monte A. (D. C.) 12 Fed. 331. Now, as before stated, the stipulation presented here is in effect an agreement made in advance of any right of action that the shipper will not invoke the jurisdiction of a court of admiralty by an action in rem against the vessel if there should be a breach of the contract. This is so, because the maritime lien which the agreement attempts to waive is nothing more than a right given by the admiralty law to bring a direct action against the vessel for breach of the contract. Hughes on Admr. p. 88. But parties are not at liberty when entering into a contract, and as part of it, to agree that, in case of its breach, only one particular remedy shall be pursued, when

the law upon considerations of public policy gives more than one. The remedy which a party is entitled to take for breach of contract is given by law, and cannot be set aside by an agreement made before the cause of action has accrued; and whether the stipulation be one to oust the courts of all jurisdiction by an agreement to pursue a remedy different from that afforded in the ordinary course of judicial proceedings, as in Guaranty Trust Co. v. Green Cove Railroad, 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116, and Trott v. City Ins. Co., 1 Cliff, 439, Fed. Cas. No. 14,189, or whether it be one binding a party not to bring an action for breach of the contract, in certain courts having jurisdiction, as in Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365, and Prince S. S. Co. v. Lehman (D. C.) 39 Fed. 704, 5 L. R. A. 464, or requiring the action to be brought in a particular county, as in Nute v. Hamilton Mutual Ins. Co., 6 Gray (Mass.) 174, or whether, as in this case, the stipulation attempts to bind the shipper not to invoke the jurisdiction of a court of admiralty by an action in rem, it is void. The case last cited (Nute v. Hamilton Insurance Co., 6 Gray [Mass.] 174) was an action brought upon a policy of insurance, which provided, in effect, that the directors of the insurance company should after receiving notice of loss determine the amount, if any, for which the company was liable, and that, if not satisfied with their action, the assured might "within four months after such determination, but not after that time, bring an action at law against the company for the loss claimed, which action should be brought at the proper court in the county of Essex." The action was commenced within the time allowed in one of the courts of the county of Suffolk. It was claimed by the defendant that, as the action was not brought within the time limited in some court in the county of Essex, the action could not be maintained; but ,it was held that the provision which in effect provided that the action should only be brought in the county of Essex was invalid. The opinion of the court was delivered by Chief Justice Shaw, who, after referring to many stipulations which may be properly embodied in a contract, used the following language, which is in point upon the question here presented:

"Suppose it were stipulated in an ordinary contract that in cause of breach no action shall be brought, or that the party in default shall be liable in equity only, and not at law, or the reverse; that in any suit to be commenced no property shall be attached on mesne process or seized on execution for the satisfaction of a judgment, or that the party shall never be liable to arrest; * * * that, when sued on the contract, the defendant will not plead the statute of limitations, or a discharge in insolvency; and many others might be enumerated—is it not obvious that although in a certain sense these are rights or privileges which the party, in the proper time and place, may give or waive, yet a compliance with them cannot be annexed to the contract, cannot be taken notice of and enforced by the court or tribunal before which the remedy is sought, and cannot therefore be relied on by way of defense to the suit brought on the breach of such contract?"

There does not appear to be any difference in principle between a contract waiving the right to attach property in an action for breach of the contract and a provision in a maritime contract like that now before the court, whereby the shipper in advance waives the lien which is given by the admiralty law for his security, and thereby waives the right to proceed in rem against the vessel. In each there is an attempt to de-

prive the party entitled thereto of a remedy prescribed by law for the breach of the contract, and both are equally void.

3. The claimant also excepts to the libel, because it fails to show that the notice of loss was given within the time required by the bill of lading. It is sufficient answer to this to say that it is not shown by the libel that such notice was not given, and, this being so, if there was a failure to give the notice required, that is matter of defense, which can only be presented by answer. Westcott v. Fargo, 61 N. Y. 544, 19 Am. Rep. 300.

The exceptions are overruled.