## CUDAHY PACKING CO. v. MUNSON S. S. LINE.

Circuit Court of Appeals, Second Circuit.
December 12, 1927.

No. 64.

1. Shipping ⊜132(2)—Shipper, suing carrier for negligence, had to prove notice of claim required by ocean bill of lading, though not pleaded.

In action by shipper for alleged negligence of steamship company in failing to unload shipment of hams made from Sioux City, Iowa, to Havana, in which defendant set up terms of ocean bill of lading, but did not plead failure to give written notice of loss required by bill of lading, and based defense apparently on congestion at Havana, shipper had to allege and prove giving of notice, or some excuse for failure to give it, since, when defendant set up terms of bill of lading, plaintiff had to prove everything necessary to establish breach.

2. Shipping ⊜106(3)—Shipper was chargeable with notice of ocean bills of lading provisions referred to in through bill of lading issued by railroad.

Where shipment was made from Sioux City, Iowa, to Havana, on through bill of lading, issued by railroad company, containing clause that property was subject to conditions expressed in ocean bills of lading, and document showing forms of ocean bills of lading were mailed to shipper about time they were issued, provisions in ocean bills of lading were part of contract of which shipper was chargeable with notice.

3. Shipping ⊜102—Statutes of state where carriage contract was made could not affect validity of ocean bill of lading clause regarding notice of claim.

Where through bill of lading covering shipment from Sioux City, Iowa, to Havana, referred to provisions of ocean bills of lading which became part of contract, statutes of Iowa, where contract was made, could not affect validity of clause of ocean bill of lading requiring notice of claim of damage within 48 hours after removal of goods.

4. Shipping ⊜142—Interstate Commerce Act does not invalidate ocean bill of lading clause requiring notice of damage within 48 hours, incorporated in through bill of lading (Interstate Commerce Act, § 20 [as amended by Cummins Amendment]; § 25, subd. 4, as added by Act Feb. 28, 1920, § 441 [49 USCA §§ 20, 25]).

Interstate Commerce Act, § 20, as amended by Cummins Amendment (49 USCA § 20; Comp. St. § 8604a), forbidding clauses in bills of lading which require that notice of claim shall be given in less than 90 days, is not declaration of public policy, invalidating clause of ocean bill of lading requiring notice of claim of damage within 48 hours after removal of goods, where shipment was made from Sioux City, Iowa, to Havana, and through bill of lading was issued by railroad company, making ocean bill of lading part of contract, especially since Interstate Commerce Commission, as authorized by section 25, subd. 4, as added by Act Feb. 28, 1920, § 441 (49 USCA § 25; Comp. St. § 8596a), after transactions in suit, adopted regulations permitting bills of lading of kind used by defendant steamship company.

5. Shipping ⊜142—Carrier did not waive bill of lading notice requirement by asserting another defense, where shipper did not change position.

Defendant carrier did not waive notice of claim for damage required by ocean bill of lading by asserting that delay in unloading shipment was cause of congestion at destination, and saying nothing about lateness of notice, where shipper's time to give notice had long since passed when defendant made its objection to plaintiff's claim, and plaintiff never changed its position in reliance on defendant's original ground of objection.

6. Shipping ⊜142—Shipper's bringing action after notice that carrier relied on another defense did not estop carrier from relying on bill of lading notice requirement.

Shipper's mere bringing and maintaining of action for carrier's alleged negligence in failing promptly to unload shipment of hams at Havana, where goods were damaged, after notice that carrier relied on congestion at Havana as its defense, gave rise to no estoppel preventing carrier from relying on defense that shipper had not given notice of claim for damage required by ocean bill of lading.

7. Shipping ⊜142—Where consignee, knowing hams were subject to condemnation by board of health, dumped them, ocean bill of lading clause requiring notice of claim applied.

Where hams, apparently destroyed because of their decayed condition, and doubtless known to be subject to condemnation by board of health, were not seized by board of health, but were dumped by consignee, goods were delivered to and removed by owner, and clause of ocean bill of lading requiring notice of claim before removal, or within 48 hours after removal, applied.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Cudahy Packing Company

against the Munson Steamship Line. Judgment for defendant, and plaintiff brings error. Judgment affirmed.

The second cause of action, which is the only one here involved, sounds in tort, and is founded upon alleged negligence of the defendant as a common carrier in failing promptly to unload a shipment of hams at Havana, whereby the goods were greatly damaged.

The plaintiff delivered the merchandise to the Illinois Central Railroad at Sioux City, Iowa, on May 8, 1920, and received through bills of lading covering the transportation from that place to Havana by way of Mobile. The hams were loaded at Mobile in good order and condition on defendant's steamship Lake Orange about June 9, 1920, and reached Havana on June 14, but were not discharged until July 15, when they were found to be decayed and damaged. The vessel sailed June 11.

The defendant admitted that it was a common carrier, but denied that it was negligent, and, as a separate defense, pleaded that the through and the ocean bills of lading together constituted the contract of carriage, and that the ocean bills exempted it from liability for damage resulting from congestion of freight at the port of Havana, and that the delay in delivery was due to such congestion.

Each of the through bills of lading issued by the Illinois Central contained the following clause:

"18. That the property covered by this bill of lading is subject to all conditions expressed in the regular forms of bills of lading in use by the steamship company at time of shipment, and to all local rules and regulations at port of destination not expressly provided for by the clauses herein."

The regular form of bill of lading of the Munson Line contained clauses that the goods were accepted by the carrier subject to delays in delivery occasioned by strikes, labor troubles, shortage of labor, lack of facilities, or accumulation of cargo, and that the carrier should not be liable for any losses occasioned "by causes beyond the carrier's reasonable control, * * * strikes or stoppage of labor, or labor troubles of carrier's employees or others."

The ocean bills of lading also contained in clause 22 the provision that:

"If there is opportunity to discover by examination, before removal of the goods, that loss of contents, or shortage of, or damage to, the goods exists or may exist, the carrier shall not be liable for any such loss, shortage or damage, unless notice of claim

therefor be presented in writing to the carrier or to the master or agent of the vessel before removal of the goods. If there is no opportunity to discover, before removal, that such loss, shortage, or damage exists or may exist, then the carrier shall not be liable therefor unless such notice of claim be so presented within 48 hours after removal of the goods. The carrier shall not, in any event, be liable for any claim or demand arising hereunder or in respect of the goods, unless notice of the claim be presented in writing to the carrier within thirty days after delivery of the goods to the carrier. No suit or proceeding to recover for or upon any claim or demand shall be maintained against the carrier or vessel, or owners thereof, unless commenced within six months after delivery of the goods to the carrier, and the lapse of such period shall be deemed a complete bar to recovery in any such suit or proceeding not sooner commenced, notwithstanding the carrier may be a nonresident or a foreign corporation. Nothing shall be deemed a waiver of the provisions of this article except a written express waiver signed by the carrier."

While copies of the clauses of the ocean bills of lading were incorporated in the answer, defendant pleaded as a special defense that the congestion caused the delay, but did not set forth that no notice of claim for damage was given as required by the contracts of carriage, but proved under plaintiff's objection that the first notice of claim was not given until more than 14 months after the unloading of the goods.

At the close of the case the plaintiff contended that the question of negligence in not unloading sooner should be left to the jury, but the trial judge directed a verdict for defendant, on the ground that plaintiff had failed to prove notice of claim as required by clause 22 of the ocean bills of lading. The writ of error is to test the validity of this clause and the sufficiency of the answer.

. Gilbert H. Montague, of New York City (Joseph W. Goodwin, of New York City, and Thomas Creigh, of Chicago, Ill., of counsel), for plaintiff in error.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating and Staunton Williams, both of New York City, of counsel), for defendant in error.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). The first objection made to a reliance upon the clause requiring written notice of claim as a condi-

tion of liability for loss is that the failure to comply with it was not pleaded in the answer. It is true that the answer alleged that each through bill of lading was subject to all conditions in the ocean bill of lading, that these two bills of lading constituted the contract of carriage, and that the answer incorporated the provisions of both. But the failure to give a written notice of loss was nowhere alleged, and the defense was apparently based on the congestion at Havana, which was an exception in the ocean bill of lading.

It is argued that the provision requiring notice of claim resembled an exception, and that the failure to give it, if that be relied upon, should have been pleaded as a defense. Much may be said for this contention, on the ground that a shipper ought to be warned of such a matter in advance of trial, so that he may suffer no surprise and be prepared to meet it. In the General G. W. Goethals (D. C.) 298 F. 933, Judge Ward held that compliance with the notice clause was a condition precedent to recovery, and had to be proved by a libelant when seeking damages for breach of a contract of carriage. That decision was affirmed by this court at 298 F. 935. To the same effect are the opinions of Judge Baker in Metropolitan Trust Co. v. Toledo, etc., Ry. Co. (C. C.) 107 F. 628, of Judge Neterer in The Sagadahoc (D. C.) 291 F. 920, and of Judge Carpenter in Brennan Packing Co. v. Cosmopolitan Shipping Co. (D. C.) 14 F.(2d) 971. And the Circuit Court of Appeals for the Third Circuit in The Westminster, 127 F. 680, held that such a notice of claim was a condition precedent, and must be affirmatively established by the party seeking to recover, irrespective of which side pleaded it.

But in the case of Central Vermont R. Co. v. Soper, 59 F. 879, the Circuit Court of Appeals of the First Circuit, while it was not obliged to decide the question and avoided passing upon it, seemed to regard a notice of claim required by a bill of lading as a condition subsequent, which should be pleaded as a defense, and so Judge De Haven held in The Tampico (D. C.) 151 F. 689.

In Southern Ry. Co. v. Mooresville Cotton Mill (C. C. A.) 187 F. 72, there were bills of lading containing time limits of 10 and 30 days in which to file claims for loss. These time limits the trial court found unreasonable and void, but held that, inasmuch as the shipper had contracted to give notice of claim, although upon unreasonable terms, the duty devolved upon him to give such notice within a reasonable time. The action, as in the case at bar, was based upon a common-

law liability, and the defendant had not pleaded that the claims were not presented within a reasonable length of time. The Circuit Court of Appeals of the Fourth Circuit held: (1) That the clause requiring presentation of claims was unreasonable; (2) that, as the bills of lading contained no provision other than the one declaring that no claim could be made unless preferred within the 10 or the 30 days, the consignee was not under obligation to prefer his claim in any other time than that fixed by the statute of limitations of the state. The court also said that, if the defendant intended to rely upon the fact that the claims were not preferred within a reasonable length of time, it should have pleaded this defense.

This last was apparently a dictum based upon a decision of the New York Court of Appeals in Hoye v. Pennsylvania R. R. Co., 191 N. Y. 101, 83 N. E. 586, 17 L. R. A. (N. S.) 641, 14 Ann. Cas. 414, to the effect that a provision in a bill of lading that the carrier should not be liable for loss or damage unless a claim be made in writing within a specified time after the delivery of the property to the consignee is not a condition precedent, but a limitation of the claimant's common-law right of recovery, and is therefore a matter of defense, which must be pleaded by the carrier. Yet in New York, where a fire insurance policy required prompt notice of loss by the assured, a declaration which failed to allege compliance with this condition was said to be bad on demurrer. Inman v. Western Fire Ins. Co., 12 Wend. 452. See, also, Meech v. National Accident Soc., 50 App. Div. 144, 63 N. Y. S. 1008; Williams v. Philadelphia Fire Association, 119 App. Div. 573, 104 N. Y. S. 100; Bogardus v. New York Life Ins. Co., 101 N. Y. 328, 4 N. E. 522. Indeed, such seems to be the general rule of pleading in actions to recover upon insurance policies. Doyle v. Phœnix Ins. Co., 44 Cal. 264; McCormack v. North British Ins. Co., 78 Cal. 468, 21 P. 14; United States Lloyds, Inc., v. Savannah Marmon Agency, 29 Ga. App. 683, 116 S. E. 326; Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Dolbier v. Agricultural Ins. Co., 67 Me. 180; Johnson v. Phœnix Ins. Co., 112 Mass. 49, 17 Am. Rep. 65; Edgerly v. Farmers' Ins. Co., 43 Iowa, 587; Insurance Co. v. McGookey, 33 Ohio St. 555; Harriman v. Queens Ins. Co., 49 Wis. 71, 5 N. W. 12.

The distinction between a condition precedent and subsequent is largely formal, and the category in which a particular condition falls is of no great importance, so long as it is clearly understood by the profession who

have to deal with it in practice. A notice of claim seems to have been termed a "condition precedent" in the Cummins Amendment to section 20 of the Interstate Commerce Act (49 USCA § 20 [Comp. St. § 8604a]), and the fact that the bill of lading requires the shipper to give notice if he seeks to recover makes a difference between the notice of claim and exceptions in the contract like perils of the sea, which relieve the carrier from its obligations. The requirement that notice be given by the shipper imposes an affirmative duty on him, and makes him in respect to it an *actor*.

[1] The question is not one of following state practice, for the state practice does not require a defendant to plead that a plaintiff has not performed a condition precedent. The state Court of Appeals has held as a matter of law that the giving of notice is not such a condition precedent, while we have very recently held in The Gen. G. W. Goethals, supra, the contrary. If plaintiff had sued on the bills of lading instead of in tort sur case, it would have been obliged under the Goethals decision to allege and prove the giving of notice or some excuse for failure to give it. This burden of proof cannot be avoided by suing in tort. When the defendant set up the terms of the bill of lading, which are not disputed, the plaintiff had to prove everything necessary to establish a breach.

[2] It is objected that the method of incorporating in the through bills of lading by reference the conditions of the ocean bills of lading was unreasonable, and that the conditions were therefore not binding upon plaintiff. Documents showing the form of the ocean bills of lading were mailed to the plaintiff about June 12, 1920, long before the cargo was unloaded and apparently about the time the ship sailed from Mobile and the ocean bills were issued.

In some early cases provisions inscribed on the back of bills of lading, shipping receipts and tickets affecting the liability of the carrier were held insufficient communications of the conditions of carriage. Railroad Co. v. Manufacturing Co., 16 Wall. 318, 21 L. Ed. 297; Ayres v. Western R. Corp., 14 Blatch. 9, Fed. Cas. No. 689; N. J. Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465; Henderson v. Stevenson, 2 H. L. Sc. 470. In The Majestic, 166 U. S. 375, 17 S. Ct. 597, 41 L. Ed. 1039, the notice was in fine type, not referred to in the ticket itself. But it seems established that the provisions in the ocean bills of lading referred to in the through bill of lading were part of the contract of which the shipper was chargeable

with notice. Cau v. Texas & Pac. Ry., 194 U. S. 427, 24 S. Ct. 663, 48 L. Ed. 1053; Kansas City Southern Ry. v. Carl, 227 U. S. at pages 652, 653, 33 S. Ct. 391, 57 L. Ed. 683; American Ry. Exp. Co. v. Lindenburg, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed. 414; South Atlantic S. S. Line v. London-Savannah Naval Stores Co. (C. C. A.) 255 F. 306; The Susquehanna (C. C. A.) 296 F. 461; Brennan Packing Co. v. Cosmopolitan Shipping Co. (D. C.) 14 F.(2d) 971.

[3] It is contended that the provision in the Munson bills of lading that notice of claim of damage should be presented to the carrier in writing within 48 hours after the removal of the goods was void because (a) contrary to the public policy of Iowa, where the contract of carriage was made; (b) contrary to the policy of the laws of the United States, as declared in the Interstate Commerce Act.

There can be no doubt that the statutes of Iowa and the decisions of its courts have no bearing on the validity of the clause. In the first place, they relate only to carriage by rail, and not by water; also there is no question involved here of local state concern (Wilmington Transportation Co. v. Railroad Commission, 236 U. S. 151, 35 S. Ct. 276, 59 L. Ed. 508), and Congress has evinced a general purpose to regulate bills of lading in interstate and foreign commerce. While it has not prescribed a rule for all cases, it has entered a field in which its power to regulate is supreme, and it is highly doubtful whether state regulations would be permissible in such circumstances. Missouri Pacific R. R. v. Porter, 273 U. S. 341, 47 S. Ct. 383, 71 L. Ed. 672. But in any event we see no possibility of inferring a policy applicable to water carriers engaged in foreign commerce from local legislation as to railroads, where the whole history of the two is so different. If any statutory declaration of public policy is to be relied on here, it must be found in acts of Congress, and not in the statutes of Iowa.

[4] Section 20 of the Interstate Commerce Act (as amended by the Cummins Amendment of March 4, 1915 [38 Stat. 1196]) forbids clauses in bills of lading which require that notice of claim shall be given in less than 90 days and suit shall be instituted in less than 2 years. It also forbids requirement of a notice of claim, where the damage is due to the negligence of the carrier. But it is not disputed that section 20 covers in terms only transportation between states and between the United States and an adjacent foreign country. The contract of carriage in the present case is therefore not directly affected.

Section 25, added to the Interstate Com-

merce Act by the Transportation Act (Act Feb. 28, 1920 [49 USCA §' 25; Comp. St. § 8596a]) makes "every common carrier by water in foreign commerce, whose vessels are registered under the laws of the United States" subject to various provisions, one of which (subdivision 4) is:

"The Commission shall, in such manner as will preserve for the carrier by water the protection of limited liability provided by law, make such rules and regulations not inconsistent herewith as will prescribe the form of such through bill of lading. * * * "

No form of through bill of lading was prescribed by the Commission until long after the transactions in question, so that the bills of lading here did not come within the provisions of section 25, even if the Lake Orange was a vessel "registered under the laws of the United States," a matter as to which the record is silent. But the plaintiff contends that section 20 forbade a requirement of notice of claim such as is found in the bills of lading, and argues that, if such a clause would not have been good in a contract for transportation by water to a country like Mexico (because adjacent to the United States, and therefore within section 20), it ought not to be held valid here. In other words, an attempt is made to adopt the prohibitions of section 20 as general declarations of governmental policy and carry them into section 25; or, if section 25 be not applicable because of failure to prove American registry, and the Lake Orange be regarded as a foreign vessel, to discover a public policy in section 20 which will defeat the requirement of notice of claim, though no act of Congress directly applies to the case.

It was said in Gooch v. Oregon Short Line R. R. Co., 258 U. S. at page 24, 42 S. Ct. 193 (66 L. Ed. 443), "that a statute may indicate a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind." The foregoing consideration was thoroughly weighed in the Gooch Case, and, indeed, relied upon to support the argument in the minority opinion written by Justice Clarke and concurred in by the Chief Justice and Justice McKenna. But a majority of the court held that section 20 of the Cummins Amendment was not such a declaration of policy as rendered invalid a provision in a drover's railroad pass that "the carrier should not be liable for any injury to him upon the trip unless he or his personal representative should within thirty days after the injury give notice in writing of his claim. * * * " Page 23 (42 S. Ct. 192).

Justice Holmes, writing for the majority, suggested that "less time reasonably may be allowed for a notice of claims for personal injuries than is deemed proper for goods"; but the result he reached was apparently due to a conviction that "it is impossible to suppose that Congress, when it was.dealing with notices of claims, and even with the claims of passengers for baggage, * * * should not have thought of their claims for personal injuries, and, as it passed them by, we must suppose that it was satisfied to leave them to the Interstate Commerce Commission and the common law." Page 25 (42 S. Ct. 193).

The reasoning in Gooch v. Oregon Short Line R. R. Co., supra, seems to preclude us from discovering in the congressional legislation a public policy that invalidates the notice clause of the bills of lading.

The plaintiff relies on the opinion of Judge Cardozo in South & Central American Commercial Co., Inc., v. Panama R. R., 237 N. Y. 287, 142 N. E. 666. In that case the provision of the Cummins Amendment, section 20, prohibiting carriers from limiting the time to institute actions against them to a shorter period than 2 years was held to be a sufficient declaration of public policy to render invalid the limitation of 60 days in an ocean bill of lading not expressly governed by the act.

Judge Cardozo, however, recognized the weight of the decision in the Gooch Case, and particularly distinguished provisions affecting the right to sue from clauses requiring prompt notice of claim. He nowhere intimated that a requirement of reasonable notice would be affected by the provisions of section 20 of the Cummins Amendment, except where found in' a contract of carriage directly' covered by the act. Indeed he said, at page 292 (142 N. E. 668) :

"We are not to confuse a limitation for a preliminary notice with one for the institution of suit. Prompt notice may be necessary as a safeguard against fraud. When notice has been given, so that investigation can be made, there is little relation between the opportunity for fraud and a postponement of the suit."

If the Lake Orange was of American registry, not only had the Interstate Commerce Commission prior to the transactions in suit adopted no regulations or forms for bills of lading which prevented a short limitation of time to present notice of claim, but when it finally adopted forms, as it was authorized to do by section 25 (4), it permitted bills of lading of the very kind used here. Is it likely,

after Congress left shipments delivered by railway carriers to water carriers for foreign export to the regulation of the Commission, that it had a different policy derived by analogy from section 20 of the Cummins Amendment until the Commission acted, and this though section 20 by its terms never covered shipments by water to nonadjacent countries? And, if the vessel was of foreign registry, is it possible that a governmental policy based solely on analogy and implication can subject it to restrictions neither applicable to American vessels nor prescribed by any statute?

Amendment after amendment has been made to the Interstate Commerce Act in its long history. Again and again Congress has extended its scope under the broad power to regulate interstate and foreign commerce. In such circumstances there is the strongest ground to believe that what Congress "passed * * * by * * * it was satisfied to leave * * * to the Interstate Commerce Commission and the common law." Gooch v. Oregon Short Line R. R. Co., supra, at page 25 (42 S. Ct. 193). It is unlikely that Congress, while carefully extending its legislation to particular subjects in special and detailed ways, was also expressing by inference a general policy applicable to other matters which the acts in terms never embraced. The argument that such an intention has been manifested did not prevail in the Gooch Case, and the theory that such an inference should be drawn here, seems speculative and unfounded.

Notice clauses like those under discussion were repeatedly held valid in cases arising prior to the Transportation Act of 1920. St. Louis, Iron Mountain & So. Ry. Co. v. Starbird, 243 U. S. 592, 37 S. Ct. 462, 61 L. Ed. 917; Erie R. R. Co. v. Stone, 244 U. S. 332, 37 S. Ct. 633, 61 L. Ed. 1173; Southern Pacific Co. v. Stewart, 248 U. S. 446, 39 S. Ct. 139, 63 L. Ed. 350; The Persiana (C. C. A.) 185 F. 396; The San Guglielmo (C. C. A.) 249 F. 588; The Verdi (C. C. A.) 282 F. 572; The Gen. G. W. Goethals (C. C. A.) 298 F. 935; Anchor Line v. Jackson (C. C. A.) 9 F.(2d) 543; The Bencleuch (C. C. A.) 10 F.(2d) 49. There was no holding to the contrary in South & Central American Commercial Co. v. Panama R. R. Co., supra, and the reasoning in Gooch v. Oregon Short Line, supra, would seem to sanction the notice clauses of the Lake Orange bills of lading.

[5, 6] But the plaintiff insists that the carrier waived notice requirement by asserting that the delay was because of congestion at Havana and saying nothing about the lateness of the notice. Plaintiff's Exhibits 113, 114. But when the defendant made its objection to plaintiff's claim the latter's time to give notice under the provisions of the bills of lading had long since passed. The plaintiff never changed its position in reliance upon defendant's original ground of objection, and there is nothing to prevent it from insisting upon a further defense. Southern Pacific v. Stewart, 248 U. S. 446, 39 S. Ct. 139, 63 L. Ed. 350; Grace & Co. v. Panama R. R. Co. (C. C. A.) 12 F.(2d) 338; The Texas Maru (C. C. A.) 13 F.(2d) 538. The mere bringing and maintaining of this action after notice that defendant relied on congestion at Havana as its defense gave rise to no estoppel. There is no reason to believe that any supposed waiver by defendant caused the action to be brought, when it would not have been brought otherwise.

[7] There is likewise no basis for the contention that a cause of action to recover damages in respect to the goods of Sobrino & Company was proved. It is argued that these goods were seized and condemned by the board of health at Havana, and that the notice clause, therefore, did not apply. It is true that the notice clause would only apply to goods removed by the owner (The Bencleuch [C. C. A.] 10 F.[2d] 49); but the goods of Sobrino & Co., though apparently destroyed because of their decayed condition, and doubtless known to be subject to condemnation by the board of health, were not seized by the board of health, but dumped by Sobrino. Record, fol. 400. Hence the goods were delivered to and removed by the owner, and the notice clause was effective.

For the foregoing reasons, we think the clause of the bill of lading requiring notice of claim was valid and unaffected by the Cummins Amendment referred to. Even if, in view of the whole situation, it should be thought that the clause required too short a notice, yet there was no proof of a reasonable notice, such as we held necessary under such a contract of carriage in the case of W. R. Grace & Co. v. Panama R. R. Co., 12 F.(2d) at page 340. The only notice proved by any one was received about 14 months after the goods were discharged.

The judgment is affirmed.